UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RHOM,<br><br>  Plaintiff,<br><br> v.<br><br>THUMBTACK, INC.,<br><br>  Defendant. | Case No. 16-cv-02008-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 41, 43 |

## I. INTRODUCTION

Pending before the Court are two unopposed motions in this putative class action. First, Plaintiff Michael Rhom moves the Court for an order granting final approval of the parties' proposed settlement. Dkt. No. 43. Second, Plaintiff moves the Court for an award of attorneys' fees and costs. Dkt. No. 41. The Court held a final fairness hearing on both motions on October 12, 2017. For the reasons stated below, the Court **GRANTS** both motions.

## II. BACKGROUND

### A. Factual Allegations and Procedural History

Defendant runs Thumbtack, an online platform that connects individuals with service professionals, including Plaintiff. Dkt. No. 1 ¶ 2. Plaintiff alleges that it was Defendant's policy or practice to obtain consumer reports on service professionals that used or accessed Thumbtack. Dkt. No. 1-1 ("Compl.") at ¶ 14. Plaintiff claims that Defendant failed to properly disclose, obtain authorization for, and provide notice and copies of consumer reports obtained purportedly for "employment purposes." *Id.* at ¶¶ 15–22. Plaintiff also asserts that, to the extent that Defendant did not obtain consumer reports for employment purposes, Defendant lacked permissible purposes, made false pretenses, and/or made inaccurate certifications in acquiring those reports from the relevant reporting agencies. *Id.* at ¶¶ 23–26, 30. Plaintiff asserts that Defendant's actions violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786, and the

California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17203.

Thumbtack removed this action on April 15, 2016. Dkt. No. 1. On June 2, 2016, Thumbtack moved to dismiss, or in the alternative, stay the case pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 12 at 1. The Court did not rule on the motion, and the parties engaged in informal and formal written discovery. Dkt. No. 43-1 ¶¶ 7–8. The parties held an ADR phone conference on July 8, 2016, but failed to resolve the matter. *Id.* at ¶ 14. The parties ultimately reached a proposed settlement agreement, and filed for preliminary approval on November 16, 2016. Dkt. No. 33. The Court held a hearing on February 9, 2017. Dkt. No. 34. Based on comments made at that hearing, Plaintiff submitted a revised version of the proposed settlement agreement on February 16, 2017, along with joint supportive supplemental briefing. Dkt. No. 35. On May 12, 2017, the Court granted preliminary approval. Dkt. No. 39. At that time, the Court provisionally certified a damages class under Rule 23(b)(3). Dkt. No. 39 at 2. The Court also appointed Plaintiff as class representative, designated CounselOne, P.C. as class counsel, and approved CPT Group as the settlement administrator. Dkt. No. 39 at 2, 4.

### B. Overview of the Proposed Settlement

On September 7, 2017, the parties submitted a class action settlement agreement for final approval that details the provisions of the proposed settlement. *See* Dkt. No. 43-1, Ex. 1 ("SA"). The key terms are as follows:

Class Definitions: All service professionals in the United States who accessed and/or used the Thumbtack platform on whom Thumbtack obtained a report through Checkr or Sterling from March 22, 2011 through the present who had not yet agreed to Thumbtack's December 11, 2015 Terms of Use or subsequent Thumbtack Terms of Use at the time the report was obtained by Thumbtack. SA ¶ 1.31. The parties represent that there are a total of 66,676 persons who meet the class definition. *See* Dkt No. 43 at 7.

Monetary Relief: Defendant agrees to pay a gross settlement sum of $225,000 in full settlement of the claims asserted in Plaintiff's complaint. SA ¶ 2.1.1. This includes an award of attorneys' fees and costs, an incentive award to the named Plaintiff, and all costs of administration, including settlement administration fees. *Id*. Based on the claims submitted, each class member

will receive a payment of approximately $41.39. *See* Dkt. No. 43-2 ¶ 16. The settlement fund is non-reversionary, such that the entire settlement will be paid out to those class members who submitted valid and timely claim forms. SA ¶ 2.1.1.

<u>Release</u>: The class, including Plaintiff, will release Defendant from all claims, whether known or unknown, that were asserted or could have been asserted arising from or related to allegations set forth in the complaint. SA ¶¶ 1.25, 4.2.

<u>Exclusion and Objection Procedures</u>: A person in the settlement class may request to be excluded from the settlement by sending a written request. SA ¶ 6.2. A class member may also object to the terms of the proposed settlement, the award of attorneys' fees, or Plaintiff's incentive award by sending a written objection. SA ¶ 6.3. Class notice specified procedures for submitting a valid and timely objection or request for exclusion. *See* Dkt. No. 43-2, Exs. A–C.

<u>Incentive Award</u>: Any incentive request for Plaintiff will not exceed $5,000. SA ¶ 8.2.

<u>Attorneys' Fees and Costs</u>: Class counsel may seek an award of reasonable attorneys' fees, expenses, and costs from the gross settlement fund. SA ¶ 8.1. Thumbtack agreed not to oppose class counsel's petition for attorneys' fees of up to 25% of the settlement fund. *Id.*

## III. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). In its order granting preliminary approval, the Court observed that a $5,000 incentive award for the named Plaintiff potentially raised concerns regarding the adequacy of representation. Dkt. No. 39 at 2–3, n. 1, 2. That concern was based partly on a then-anticipated 10% claims rate, which would result in each participating class member receiving about $15. *See id.* Considering the number of valid and timely claims forms actually submitted, however, each participating class member will ultimately receive a payment of $41.39. Dkt. No. 43-2 ¶ 16. In addition, and as discussed in greater detail below, Plaintiff has expended significant effort in prosecuting this action. *See* Dkt. Nos. 41-2 ¶ 9,

3

41-1 ¶ 37. These factors sufficiently address the Court's earlier concerns regarding the adequacy of representation. *See Morey v. Louis Vuitton N. Am., Inc.*, No. 11CV1517 WQH BLM, 2014 WL 109194, at *2–3, 9, 11 (S.D. Cal. Jan. 9, 2014) (granting final approval to a settlement where each class member received a merchandise certificate in the amount of $41, and the named plaintiff was awarded $5,000); *Dennis v. Kellogg Co.*, No. 09-CV-1786-L WMC, 2013 WL 6055326, at *3–8 (S.D. Cal. Nov. 14, 2013) (approving final settlement where payouts to individual claimants ranged between $5 and $45, and incentive awards totaled $5,000 for each named plaintiff). Because no other facts have changed that would affect these requirements since the Court preliminarily approved the class on May 12, 2017, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 39 at 1–2. The Court affirms its previous findings and certifies the settlement class.

### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ."). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see Hanlon*, 150 F.3d at 1026. "The

relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. May 27, 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice plan previously approved by the Court, Dkt. No. 39 at 3–4, was implemented and complies with Rule 23(c)(2)(B). As outlined in the settlement agreement, Defendant provided the third-party settlement administrator, CPT Group, with names and email addresses for putative class members. *See* SA ¶ 5.1; Dkt. No. 43-2 ¶¶ 5–6. After removing duplicative records, CPT Group notified all known class members by email. *Id.* ¶ 5. CPT Group states that class notice was provided as directed. *Id.* The email notice contained information on the settlement, as well as a hyperlink to a settlement website with an electronic claim form. *Id.* ¶ 9. CPT Group was unable to complete email notice to 4,626 class members due to email bounce backs. *Id.* ¶ 6. CPT Group sent those individuals physical notice via postcard. *Id.* ¶¶ 6–7. Prior to sending physical notice, CPT Group ran mailing address records through the National Change of Address Database and received updated addresses. *Id.* As of August 11, 2017, CPT Group had

5

1     re-mailed 367 postcards as a result of address forwarding, skip trace, or re-mail request from class

2     members. *Id.* ¶ 8. In addition to a settlement website, CPT Group also set up a toll-free number to

3     provide information and answer questions on the proposed settlement. *Id.* ¶ 10. The parties

4     received 2,398 claim forms, one exclusion request, and one objection. *Id.* ¶¶ 12–14. In light of

5     these facts, the Court finds that the parties have sufficiently provided the best practicable notice to

6     the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1. Strength of Plaintiff's Case, Litigation Risks, and Risks of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. Jun. 27, 2014) (quotation omitted).

This action reached settlement before the Court had an opportunity to consider the merits of the claims. Yet Plaintiff would face both factual and legal hurdles were the litigation to proceed. In Defendant's notice of removal, Defendant "dispute[d] Plaintiff's and the proposed classes' claims in their entirety." Dkt. No. 1 at 1. Defendant's motion to dismiss asserted several discrete challenges to the legal basis and factual sufficiency of Plaintiff's claims under FCRA, ICRAA, and the California UCL, respectively. Dkt. No. 12 at 2–3. Plaintiff recognizes the difficulties of showing that Thumbtack violated those statutes by obtaining consumer reports for

"employment purposes." *See id.* at 2, 7–12, 21–22; Dkt. No. 43 at 17. Plaintiff also identifies challenges to obtaining statutory damages under FCRA, which requires Plaintiff to show that Defendant willfully violated that statute. *See* Dkt. No. 43 at 17–18; Dkt. No. 12 at 19–21; *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–59 (2007) (leaving open a defense for a defendant's reasonable or even careless construction of a statute). In addition, two potentially dispositive cases—*Robins v. Spokeo, Inc.*, Case No. 11-56843 and *Moran v. Screening Pros, LLC*, Case No. 12-57246—created uncertainty and legal risk for Plaintiff throughout this litigation. *See* Dkt. No. 43 at 17; Dkt. No. 12 at 23–25. With respect to maintaining class action status, a putative class of 66,676 service professionals itself presents complex issues potentially undermining certification.

Considering Defendant's apparent willingness to defend against this action and the uncertain state of the law, Plaintiff was not guaranteed a favorable result. In reaching a settlement, however, Plaintiff ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors support approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

**2. Settlement Amount**

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $225,000 settlement amount falls "within the range of reasonableness" in view of litigation risks and costs. Each participating class member will receive a pro rata share of $41.39 after deductions for attorneys' fees and costs, settlement administration costs, and an incentive award for Plaintiff. *See* Dkt. No. 43-2 ¶ 16. That amount is commensurate with recoveries approved by other California district courts. *See In re Toys R Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (recognizing as reasonable a $5 to $30 award given the difficulties of proving actual or statutory damages under FCRA); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943–44 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. Jan. 6, 2016) (granting final approval to a class action settlement awarding $15 to each claiming class member despite statutory damages ranging up to $750). And as discussed,

7

recovery of statutory damages under FCRA requires a high threshold showing that the Defendant acted willfully. The Ninth Circuit has cautioned that just because a settlement could have been better "does not mean the settlement presented was not fair, reasonable or adequate." *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

### 3. Extent of Discovery Completed and Stage of Proceedings

Class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiff investigated Defendant's policies and practices for obtaining consumer reports and conducting background checks. Dkt. No. 43-1 ¶¶ 8–9. The parties exchanged Rule 26(f) disclosures and discovery requests and responses. *Id.* Both sides fully briefed and argued Defendant's motion to dismiss or stay the action. *See* Dkt. Nos. 12, 16, 22. Plaintiff pursued settlement only after conducting extensive legal research, assessing the contested pleadings, and conferring at arms-length with opposing counsel. *Id.* ¶¶ 8–13, 18. The Court finds that the parties have received, examined, and analyzed those documents and materials that sufficiently enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 4. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotation omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the classes' interests in this action. *See* Dkt. No. 39 at 2. As discussed, class counsel initiated settlement discussions only after assessing the risks and costs to continuing the litigation. The Court recognizes, however, that courts have diverged on the weight to assign counsel's

1 opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11,
2 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d
3 at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This
4 factor's impact is therefore modest, but favors approval.

### 5. Reaction of Class Members

The reaction of class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each class member in accordance with the methods approved by the Court, advised the class of the requirements regarding objections and exclusions. *See* Dkt. No. 43-2 ¶¶ 5–9, Exs. A–C. The deadline to submit a valid claim form was August 11, 2017. Dkt. No. 43-2, Ex. A. The deadline to object or request exclusion was July 11, 2017. *Id.* CPT Group received 2,398 valid claim forms, one objection, and one request for exclusion. *Id.* ¶¶ 13–14. The objection received, however, does not dispute the terms of the settlement; rather, the objector states her support broadly for Defendant's policy of conducting background checks. *See* Dkt. No. 43-2, Ex. F. As Plaintiff points out, Defendant can continue to conduct background checks even if the Court approves the final settlement. Dkt. No. 43 at 26; *see Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *7–8 (N.D. Cal. Nov. 16, 2007) (deeming irrelevant similarly styled objections). To be sure, the overall class response, while positive, was subdued. Just 2,398 of 66,676 putative class members submitted valid and timely claim forms— about 3.5%. Even still, courts have approved settlements with lower response rates. *See Touhey v. United States*, No. EDCV 08-1418-VAP (RCx), 2011 U.S. Dist. LEXIS 81308, at *21–22 (C.D. Cal. Jul. 25, 2011) (approving a class action settlement where the response rate was approximately 2%, citing the low number of objections and agreement's overall fairness); *Tait v. BSH Home Appliances Corp.*, No. SACV100711DOCANX, 2015 WL 4537463, at *8 (C.D. Cal. Jul. 7, 2015)

(approving a class settlement where the response rate was 3%, observing that this result was likely "realistic"). The overall absence of objections and opt-outs indicates support among the class members and weighs in favor of approval. *See, e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected).

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiff's motion for final approval of class action settlement is **GRANTED**.

### B. Motion for Attorneys' Fees and Costs

In its second unopposed motion, class counsel asks the Court to approve an award of $56,250 in attorneys' fees and $2,500 in costs. Dkt. No. 41 at 1. Class counsel also seeks a $5,000 incentive award for the named Plaintiff for his assistance in this case. *Id.*

#### i. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

10

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances, . . . either method may . . . have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (quotation omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

Class counsel here seeks $56,250 in fees, or 25% of the settlement amount. *See* Dkt. No. 41 at 1, 9. That meets the benchmark for a reasonable fee award under the percentage-of-recovery method. *See In re Bluetooth*, 654 F.3d at 942. The fee amount requested is also less than class counsel's fees would be if calculated using the lodestar method. In calculating its lodestar, class counsel contends that it expended a combined 172.7 hours between two attorneys. Dkt. No. 41 at 18. That figure includes both hours spent through the filing of the fee motion, and an estimated 10 additional hours for time spent following that motion's filing through settlement distribution, if

11

1  approved. *Id.* at 18–19. Class counsel's time estimate of 10 additional hours is based on
2  counsel's "experience and the settlement class size." *Id.* at 19. With respect to hourly rates, one
3  attorney requests a rate of $595 per hour for 87.2 hours worked. *Id.* at 18. A second attorney
4  requests a rate of $475 per hour for 85.5 hours worked. *Id.* According to class counsel, this yields
5  a lodestar of $92,496.50. *Id.* Based on the figures provided, the Court reaches the same lodestar.
6  Counsel suggests that no multiplier is needed, as "the lodestar itself is $36,246.50 higher than the
7  percentage of the fund request of $56,250 in attorneys' fees." Dkt. No. 41 at 19.

Having reviewed class counsel's qualifications and supporting documents, the Court finds that the billing rates used are reasonable and generally in line with rates in this District for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4063144, at *4 (N.D. Cal. Aug. 15, 2014) (collecting cases, and finding prevalent rates ranging from $400 for associates to $750 for partners litigating civil rights and employment cases in this District); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1099 (N.D. Cal. 2010) (concluding that a rate of $700 was "in line with the overall market rate for experienced civil rights attorneys" in the Northern District); *Davis v. Prison Health Servs.*, No. C 09-2629 SI, 2012 WL 4462520, at *9 (N.D. Cal. Sept. 25, 2012) (awarding hourly rates of between $675 and $750 to experienced Bay Area lawyers practicing civil rights, employment, and public entity law). In addition, and having carefully reviewed the documentation provided by class counsel, the Court finds reasonable the number of hours expended in this action given the length of the case and its procedural posture. *See* Dkt. No. 41-1 ¶¶ 8–12. Any questions the Court might have about class counsel's lodestar calculations are tempered by class counsel's actual fee request, which was approximately $36,000 lower than the lodestar amount. The Court thus **GRANTS** class counsel's request for attorneys' fees in the amount of $56,250.

### ii. Attorneys' Costs

Class counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation omitted). Class counsel seeks reimbursement of $2,500 in litigation costs. Dkt. No. 41 at 22. Class counsel represents that the $2,500 amount requested is lower than that its actual out-of-

pocket costs, totaling $3,489 prior to filing the motion for fees and costs. *Id*; *see* Dkt. No. 45 ¶ 4. Class counsel has provided itemized documentation demonstrating that the amount requested covers expenses of filing, document delivery, and travel. *See id.* Defendant does not oppose class counsel's request. Dkt. No. 41 at 2. The Court finds the amount requested by counsel reasonably incurred, and the Court **GRANTS** in full the motion for costs in the amount of $2,500.

### iii. Incentive Award

Class counsel requests a service award of $5,000 for named Plaintiff, which Defendants also do not oppose. *See* Dkt. No. 41 at 2. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez,* 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* at 1165 (quotation omitted). The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton*, 327 F.3d at 977 (quotation omitted).

Plaintiff added value to this class action. Plaintiff estimates that he expended approximately 60 hours in the prosecution of this action, including time spent communicating with counsel, identifying potential witnesses, producing relevant documents, preparing for a deposition, participating in settlement negotiations, and reviewing the settlement agreement. *See* Dkt. No. 41-2 ¶ 9. Plaintiff also undertook financial and reputational risks in acting on behalf of the class, considering in particular his alleged business success. Dkt. No. 41-2 ¶¶ 6, 11, 16. Courts in this district have approved awards of similar amounts, recognizing that $5,000 is "presumptively

reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *see Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (granting an award of $5,000 to a plaintiff devoting a similar number of hours to prosecuting a wage and hour class action); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"). A $5,000 award also equals approximately 1-2% of the total settlement fund, which is consistent with other court-approved enhancements. *See* Dkt. No. 41-1 ¶ 41; *Sandoval v. Tharaldson Empl. Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *10 (C.D. Cal. Jun. 15, 2010) (finding a $7,500 award, or 1% of the settlement fund, fair and reasonable).

## IV. CONCLUSION

For the foregoing reasons it is hereby ordered that:

a. Plaintiff's Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Costs to Class Counsel, and Incentive Award are hereby **GRANTED**.

b. The Court approves the settlement amount of $225,000, including payments of attorneys' fees in the amount of $56,250; costs in the amount of $2,500; and an incentive fee for the named Plaintiff in the amount of $5,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are directed to submit a joint proposed judgment by October 24, 2017.

**IT IS SO ORDERED.**

Dated: 10/17/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge